IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DELORES BONEY, individually and as a Class I representative of Odie Boney and Aaron M. Boney, et al.,<br><br>Defendants. | Case No. 09-0075-CV-W-GAF |

## ORDER

Presently before the Court is Plaintiff American Family Mutual Insurance Company's ("Plaintiff") Motion for Summary Judgment filed pursuant to Fed. R. Civ. P. 56(c) ("Rule 56(c)"). (Doc. #14). Plaintiff seeks a declaratory judgment establishing that it has no duty to defend or indemnify Defendant Joshua Worley ("Joshua") or provide coverage for bodily injury and property damage resulting from a July 14, 2002 accident under the terms of two insurance policies. *Id.* For the following reasons, summary judgment is GRANTED in part and DENIED in part.

## DISCUSSION

**I. Facts**

On or about July 14, 2002, a vehicle driven by Joshua and a vehicle driven by Defendant Aaron Boney ("Aaron") collided in Cass County, Missouri. (Plaintiff's Statement of Facts ("PSOF"), ¶14). As a result of this accident, Aaron and his passenger, Defendant Odie Boney ("Odie"), died. (PSOF, ¶16). Defendants Delores Boney, Elizabeth Boney, and Cynthia Boney

1

(collectively "the Boneys") were also passengers in the vehicle driven by Aaron. (PSOF, ¶15). At the time of the accident, Joshua was driving a 1997 Ford Expedition insured by Plaintiff. (Doc. #15, Ex. A, p. 2; D. Worley Depo., 19:12-16; J. Worley Depo., 24:9-13).

On or about March 28, 2005, the Boneys filed a lawsuit against Joshua, Aaron, and Defendant Cass County in the Circuit Court for Cass County, Missouri alleging negligence and wrongful death of Odie. (PSOF, ¶18). The Boneys assert they have suffered damages in excess of $100,000 for bodily injuries and for the death of Odie resulting from the July 14, 2002 automobile accident. (PSOF, ¶19).

Gary and Dana Worley are the parents of Joshua. (PSOF, ¶3). At all relevant times, Joshua's parents owned two vehicles, the 1997 Ford Expedition driven by Joshua at the time of the accident and a 1998 Jeep Grand Cherokee. (Doc. #15, Exs. A and D). Joshua owned a 1980 Jeep CJ7 but was driving the 1997 Ford Expedition on the day of the accident because his vehicle was at the repair shop. (Doc. #15, Ex. F; D. Worley Depo., 19:12-22). On the date of the accident, Joshua resided with his parents in his parents' home. (J. Worley Depo., 22:17-24).

At all relevant times, Plaintiff provided insurance coverage for the 1997 Ford Expedition under Policy No. 2437-6021-01-52-FPPA-MO ("the 1997 Ford Policy"). (Doc. #15, Ex. A, p. 2). Gary and Dana Worley were listed as the policyholders/named insureds on this policy. *Id.* Plaintiff also provided insurance coverage for the 1998 Jeep Grand Cherokee under Policy No. 2437-6021-11-53-FPPA-MO ("the 1998 Jeep Policy"), which also listed Gary and Dana Worley as the policyholders/named insureds. (Doc. #15, Ex. D, p. 2). Additionally, Plaintiff provided insurance coverage for the 1980 Jeep CJ7 under Policy No. 2437-6021-03-58-FPPA-MO ("the 1980 Jeep Policy"), listing Joshua as the policyholder/named insured. (Doc. #15, Ex. F, p. 2). Each policy

provided liability insurance limits for bodily injury of $25,000.00 per person and $50,000.00 per occurrence.[1] (Doc. #15, Ex. A, D, F, p. 2).

On or about March 27, 2007, the Boneys and Joshua entered into a Contract to Limit Recovery ("Contract") pursuant to Mo. Rev. Stat. § 537.065. (Contract). Pursuant to the Contract, Plaintiff paid the Boneys the total amount of $50,000.00, representing the liability policy limits of the 1997 Ford Policy. (Contract, ¶4). In the Contract, the parties further confirmed their dispute as to the coverage provided to Joshua under the 1998 Jeep Policy and the 1980 Jeep Policy (collectively "the Jeep Policies") and agreed to submit this dispute for resolution by a court of law through a declaratory judgment action to be filed at Plaintiff's expense. (Contract, ¶6). Specifically, the Boneys assert the Jeep Policies provide coverage to Joshua for the July 14, 2002 accident and they are entitled to payment of the liability policy limits of $50,000.00 under each of these two policies for a total of $100,000.00. (PSOF, ¶26). Plaintiff contends there is no coverage available to Joshua under these policies for this accident. (PSOF, ¶27).

The Jeep Policies have identical language in the provisions pertaining to this action, including sections regarding liability coverage, exclusions from coverage, definitions, and limits on liability. (Doc. #15, Exs. D and F). In the section labeled "Part I - Liability Coverage," the policies provide:

> **You** have this coverage if Bodily Injury and Property Damage Liability coverage is shown in the declarations.
>
> **We** will pay compensatory damages an **insured person** is legally liable for because of **bodily injury** and **property damage** due to the **use** of **a car** or **utility trailer**.

---

[1]These amounts satisfy the minimum limits of financial responsibility required under the Motor Vehicle Financial Responsibility Law ("MVFRL"). *See* Mo. Rev. Stat. § 303.190.2(2).

3

(Doc. #15, Exs. D and F, p. 6) (emphasis in originals). However, the Jeep Policies exclude coverage for the following:

> 9. **Bodily injury** or **property damage** arising out of the **use** of any vehicle, other than **your insured car**, which is owned by or furnished or available for regular **use** by **you** or any resident of **your** household.

(Doc. #15, Exs. D and F, p. 7) (emphasis in originals) (referred to as "the household exclusion").

The policies also define the following terms:

> 7. **Relative** means a person living in **your** household, related to **you** by blood, marriage or adoption. This includes a ward or foster child. It excludes any person who, or whose spouse, owns a motor vehicle other than an off-road motor vehicle.
>
> 12. "**We**, **us** and **our** mean the company providing this insurance."
>
> 13. "**You** and **your** mean the policyholder named in the declarations and spouse, if living in the same household."
>
> 14. **Your Insured car** means:
>
>> a. Any **car** described in the declarations and **any private passenger car** or **utility car you** replace it with. **You** must tell **us** within 30 days of its acquisition.
>>
>> b. Any additional **private passenger car** or **utility car** of which **you** acquired ownership during the policy period. **You** must tell **us** within 30 days of its acquisition that **you** want **us** to insure the additional **car**.
>>
>> c. Any **utility trailer you** own.
>>
>> d. Any **car** or **utility trailer** not owned by **you** being temporarily used as a substitute for any other vehicle described in this definition, because of its withdrawal from normal use due to breakdown, repair, servicing, loss, or destruction.

4

(Doc. #15, Exs. D and F, p. 6) (emphasis in originals). The policies also limit liability coverage with the following provision:

> The limits of liability shown in the declarations apply, subject to the following:
>
>> 1. The **bodily injury** liability limit for "each person" is the maximum for all damages sustained by all persons as the result of **bodily injury** to one person in any one occurrence.
>>
>> 2. Subject to the **bodily injury** liability limit for "each person," the **bodily injury** liability limit for "each occurrence" is the maximum for **bodily injury** sustained by two or more persons in any one occurrence.
>>
>> 3. The **property damage** liability limit for "each occurrence" is the maximum for all damages to all property in any one occurrence.
>
> **We** will pay no more than these maximums no matter how many vehicles are described in the declarations, or **insured persons**, claims, claimants, policies or vehicles are involved.

(Doc. #15, Exs. D and F, p. 7) (emphasis in originals) (referred to as "the anti-stacking provision").

The policies also state:

> **OTHER INSURANCE**
> If there is other auto liability insurance for a loss covered by this Part, **we** will pay **our** share according to this policy's proportion of the total of all liability limits. But, any insurance provided under this Part for a vehicle **you** do not own is excess over any other collectible auto liability insurance.

(Doc. #15, Exs. D and F, p. 7) (emphasis in originals) (referred to as "the other insurance provision").

**II.     Standard**

5

Pursuant to Rule 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual disputes that are irrelevant or unnecessary will not be considered. *Id.* In the absence of a factual dispute relating to an essential element of a party's claims, the Court will proceed to determine whether that party is entitled to judgment as a matter of law. *See E.E.O.C. v. Woodbridge Corp.*, 263 F.3d 812, 814 (8th Cir. 2001). In determining whether summary judgment is appropriate, the Court views all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Keathley v. Ameritech Corp.*, 187 F.3d 915, 919 (8th Cir. 1999).

**III.  Analysis**

The interpretation of an insurance policy is a question of law. *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007) (en banc). "The function of this Court is 'to interpret and enforce an insurance policy as written; not to rewrite the contract.'" *Nat'l Union Fire Ins. Co. of Pittsburgh v. Maune*, 277 S.W.3d 754, 757 (Mo. Ct. App. 2009) (*citing Lupo v. Shelter Mut. Ins. Co.*, 70 S.W.3d 16, 21 (Mo. Ct. App. 2002)). When interpreting the policy, the Court must determine whether the language is ambiguous or unambiguous. *Id.* (*citing Todd v. Missouri United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. 2007) (en banc)). To determine if the policy language is ambiguous, the Court reads the policy as a whole and considers "the language in light of the meaning that would normally be understood by the layperson who bought and paid for the policy." *Id.* at 757-58 (citations omitted).

"[A]n ambiguity arises in an insurance policy when, due to duplicity, indistinctness, or uncertainty in the meaning of the words used, the policy is reasonably open to different constructions." *Id.* at 758 (internal quotations and citations omitted). If the policy's language is ambiguous, the Court construes the ambiguous provision against the insurer and applies "a meaning that would ordinarily be understood by the insured." *Id.* (citations omitted). The Court "may not, however, under the guise of interpretation, 'unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity when none exists.'" *Id.* (*citing Todd*, 223 S.W.3d at 163). "Where insurance policies are unambiguous, the rules of construction are inapplicable, and absent a public policy to the contrary, the policy will be enforced as written." *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 210 (Mo. 1992) (en banc).

In this case, the Jeep Policies both exclude from coverage "[b]odily injury or property damage arising out of the use of any vehicle, other than your insured car, which is owned by or furnished or available for regular use by you or any resident of your household." Here, Joshua was driving the 1997 Ford Expedition, owned by his parents who, at the time of the accident, were residents of his household and therefore the Jeep Policies appear to exclude Joshua from coverage. The Boneys argue Joshua is covered by these policies because, under the 1998 Jeep Policy, the term "resident of your household" is ambiguous when taken in light of the definition of "relative" and, under the 1980 Jeep Policy, the definition of "your insured car" encompasses the 1997 Ford Expedition.

The Boneys attempt to find ambiguity between "resident of your household" and "relative" where there is none. The two terms are not inconsistent and therefore cannot render multiple interpretations of the household exclusion. To be considered a "relative" under the 1998 Jeep

7

Policy, a person must (1) be living in your household; (2) be related to you by blood, marriage, or adoption or a ward or foster child; and (3) not own a motor vehicle. Because this policy does not specifically define "resident of your household," the ordinary meaning as found in a dictionary is used. *See Chamness v. Am. Family Mut. Ins. Co.*, 226 S.W.3d 199, 206 (Mo. Ct. App. 2007) (citation omitted). A resident is "one who resides in a place." Merriam-Webster Online Dictionary, Resident – Definition, http://www.merriam-webster.com/dictionary/resident[2]. A household is "a social unit composed of those living together in the same dwelling." *Id.* at Household – Definition, http://www.merriam-webster.com/dictionary/household. Accordingly, a "resident of your household" is a person living in the same residence as the policyholder. The term "resident of your household" is broader than the term "relative" and may include a "relative" but also may include other persons. Thus, there is no inconsistency between the two terms and the Court therefore cannot find the household exclusion ambiguous.[2]

Even assuming the terms somehow create ambiguity, the term "resident of your household" in the 1998 Jeep Policy's household exclusion does not come into play under the facts of this case. The policy excludes "[b]odily injury or property damage arising out of the use of any vehicle, other than your insured car, which is owned by . . . you . . .." Here, the damages complained of by the Boneys arose out of the use of the 1997 Ford Expedition. The 1997 Ford Expedition is not "your insured car" as that term is defined under the 1998 Jeep Policy. It is owned by Joshua's parents, who are the policyholders of the 1998 Jeep Policy and therefore persons identified by the term "you." Accordingly, the household exclusion is implicated and coverage for bodily injury and

---

[2]To the extent the Boneys contend the household exclusion in the 1980 Jeep Policy is ambiguous due to the terms "resident of your household" and "relative," this reasoning also applies.

8

property damage that occurred based on the use of the 1997 Ford Expedition is expressly barred under the 1998 Jeep Policy. "Resident of your household" does not create an ambiguity in this understanding as that term holds no bearing under this particular set of facts. For these reasons, the 1998 Jeep Policy excludes Joshua from coverage and the Boneys are not entitled to recover pursuant to this policy. Plaintiff's Motion is GRANTED as to the 1998 Jeep Policy.

On the other hand, the 1980 Jeep Policy does not exclude Joshua from coverage. The household exclusion is triggered only if the vehicle involved is not "your insured car." In pertinent part, "your insured car" is defined as "any car . . . not owned by you being temporarily used as a substitution for any other vehicle described in this definition, because of its withdrawal from normal use due to . . . repair . . .." Joshua was temporarily using the 1997 Ford Expedition owned by his parents on the date of the accident because his 1980 Jeep CJ7 was being repaired. The 1997 Ford Expedition therefore falls under the definition of "your insured car" and the 1980 Jeep Policy's household exclusion does not apply in this case.

Nevertheless, the Boneys will be barred from recovering under the 1980 Jeep Policy if its anti-stacking provision is enforceable.

> "Stacking" refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle.

*Niswonger v. Farm Bureau Town & Country Ins. Co. of Missouri*, 992 S.W.2d 308, 313 (Mo. Ct. App. 1999) (citation omitted). In the absence of any public policy mandating coverage of bodily injuries, "if the policy language is unambiguous in disallowing stacking, the courts will not create

9

such extra coverage." *Id.* at 314 (citation omitted). However, if the policy language is ambiguous, the Court "should construe the policy in favor of the insured and allow stacking." *Id*.

The Boneys argue, when reading the other insurance provision and the anti-stacking provision together, the 1980 Jeep Policy is ambiguous and the Court must construe the ambiguity in their favor. In pertinent part, the anti-stacking provision reads: "We will pay no more than these maximums no matter how many vehicles are described in the declarations, or insured persons, claims, claimants, policies or vehicles are involved." The other insurance provision provides:

> If there is other auto liability insurance for a loss covered by this Part, we will pay our share according to this policy's proportion of the total of all liability limits. But, any insurance provided under this Part for a vehicle you do not own is excess over any other collectible auto liability insurance.[3]

Under the specific factual circumstances of this case, the second sentence of the other insurance provision ("the excess language") does produce inconsistency between the two provisions. *See Niswonger*, 992 S.W.2d at 318-19 (finding language similar to the excess language could be interpreted by a reasonable layperson as "superseding the anti-stacking provisions which might normally and otherwise apply" and therefore the policy had ambiguities which required the court

---

[3] Contrary to Plaintiff's assertion, the 1980 Jeep Policy's other insurance provision is implicated here. As determined above, Joshua is entitled to coverage under the 1980 Jeep Policy for the July 14, 2002 accident. In addition to this coverage, the 1997 Ford Policy also covers the loss associated with the accident, thus satisfying the first sentence of the other insurance provision. Finally, the requirements of the second sentence are also met. The coverage available under the 1980 Jeep Policy would be provided for the 1997 Ford Expedition, a vehicle not owned by Joshua, the policyholder of the 1980 Jeep Policy. Accordingly, the other insurance provision applies.

10

to allow stacking); *Barron v. Shelter Mut. Ins. Co.*, 230 S.W.3d 649, 653 (Mo. Ct. App. 2007).[4] *See also Chamness*, 226 S.W.3d at 203 (*citing Niswonger*, 992 S.W.2d at 315).

In *Chamness*, the court found language nearly identical to that in the 1980 Jeep Policy's anti-stacking provision and other insurance provision was ambiguous. *Chamness*, 226 S.W.3d at 208. The anti-stacking clause stated: "We will pay no more than these maximums no matter how many vehicles are described in the declarations, insured persons, claims, claimants or policies or vehicles are involved in the accident." *Id.* at 201. The other insurance language was:

> If there is other similar insurance on a loss covered by this endorsement we will pay our share according to this policy's proportion of the total limits of all similar insurance. But, any insurance provided under this endorsement for an insured person while occupying a vehicle you do not own is excess over any other similar insurance.

*Id.* The court determined that because "the second sentence of the other insurance clause appears to provide coverage over and above any other applicable coverage but the anti-stacking . . . language indicates that such coverage is not provided, the insurance policies' language is ambiguous." *Id.* at 207 (citation omitted). Accordingly, the court allowed the policies to be stacked. *Id.* at 208.

Pursuant to the *Erie* doctrine, this Court must follow Missouri substantive law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Given the striking similarities in the language at issue in this case when compared to the language found in *Chamness*, Missouri courts would likely find that a layperson could reasonably interpret the excess language as providing coverage over and above any other applicable coverage. *See Niswonger*, 992 S.W.2d at 318 *&*

---

[4]The Court acknowledges a recent decision from the Missouri Court of Appeals for the Eastern District serves as authority to enforce an explicit anti-stacking clause. *See Maune*, 277 S.W.3d at 760. However, the *Maune* court did not address the specific language of the anti-stacking clause in the case nor did it discuss the effect an other insurance clause may have on an anti-stacking clause. *Id.* at 760. Thus, the *Maune* case is distinguishable from the case at hand.

11

*Chamness*, 226 S.W.3d at 207. This is inconsistent with the anti-stacking provision and creates an ambiguity which must be resolved in favor of allowing stacking. *Id.* Thus, the 1980 Jeep Policy provides coverage to Joshua for the July 14, 2002 accident and the Boneys are entitled to recover damages resulting from this accident pursuant to this policy. The Court DENIES the Motion as to the 1980 Jeep Policy.

## **CONCLUSION**

The household exclusion is unambiguous and therefore the 1998 Jeep Policy does not provide coverage for the July 14, 2002 accident. However, the 1980 Jeep Policy does provide coverage because the 1997 Ford Expedition is an insured vehicle as defined by that policy. Further, the anti-stacking provision in the 1980 Jeep Policy, when read in conjunction with the excess language found in the other insurance provision, is ambiguous and therefore must be construed so as to allow stacking. Accordingly, summary judgment is GRANTED with respect to the 1998 Jeep Policy but DENIED with respect to the 1980 Jeep Policy. For these reasons, it is ORDERED

(a) that Plaintiff has no legal duty to defend Joshua under the 1998 Jeep Policy;

(b) that Plaintiff has no legal duty to indemnify Joshua under the 1998 Jeep Policy; and

(c) that the coverage purchased as shown in the 1998 Jeep Policy does not provide any liability coverage to Joshua for bodily injury or property damage resulting from the July 14, 2002 accident.[5]

s/ Gary A. Fenner<br>
Gary A. Fenner, Judge<br>
United States District Court

DATED: June 4, 2009

---

[5] Plaintiff's request for costs is DENIED.

Case 4:09-cv-00075-GAF   Document 20   Filed 06/04/09   Page 12 of 12